# EXHIBIT D

No. 17-01-0161

---

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
FROM THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

| | | |
|---|---|---|
| PATRICK J. DOHERTY, | ) | |
| Plaintiff, | ) | No. 16 L 6379 |
| | ) | |
| v. | ) | Trial Court Judge: |
| | ) | Hon. Thomas R. Mulroy |
| WASHINGTON FEDERAL BANK FOR | ) | |
| SAVINGS, JOHN GEMBARA, individually and as | ) | Date of Final Order: 12/20/16 |
| President of Washington Federal Bank, JANE TRAN, | ) | Notice of Appeal filed: 1/17/17 |
| and CROWLEY & LAMB, | ) | |

---

DEFENDANTS JOHN GEMBARA, JANE TRAN, AND
CROWLEY & LAMB, P.C.'S –BRIEF ON APPEAL

---

Counsel for Defendants-John Gembara, Jane Tran, and Crowley & Lamb, P.C.
James M. Crowley
Matthew L. Hendricksen
Plunkett Cooney, P.C.
221 North LaSalle Street
Suite 1550
Chicago, Illinois 60601
(312) 670-6900

---

ORAL ARGUMENT REQUESTED

## POINTS AND AUTHORITIES

Issue Presented ................................................................................................................1

Statement of Facts ...........................................................................................................2

Argument .........................................................................................................................6

    **I.**    **Standard On Motions To Dismiss** .........................................................6

*Andrews v. Mid-America Bank & Trust Co.,* 152 Ill. App. 3d 139, 141 (5th Dist. 1987) ..............6

*Greenberg v. United Airlines,* 206 Ill. App. 3d 40, 44 (1st Dist. 1990). .......................................6

*Knox College v. Celotex Corp.,* 88 Ill.2d 407, 409 (1981) .............................................................6

*Doherty v. Kahn,* 289 Ill. App. 3d 544, 565 (1st Dist. 1997) .........................................................6

*Orman v. Charles Schwab & Co.,* 285 Ill. App. 3d 937 (1st Dist. 1996) .......................................6

*Epstein v. Chicago Board of Education,* 178 Ill. 2d 370, 383 (1997) .............................................7

    **II.**    **The Trial Court Did Not Err in Dismissing All Counts**
            **of Plaintiff's Complaint With Prejudice Because the Complaint**
            **is Barred by *Res Judicata*** .....................................................................7

*Robinson v. Toyota Motor Credit Corp.,* 201 Ill.2d 403, 411 (2002) ..............................................7

*Arvia v. Madigan,* 209 Ill.2d 520, 533 (2004). ..............................................................................7

            **A.**   **The Trial Correctly Found Identify in the Causes of Action** .....................8

*Woolsey v. Wilton,* 298 Ill.App.3d 583, 584 (3d Dist. 1998) ..........................................................8

*Ross Advertising, Inc. v. Heartland Bank and Trust Co.,* 2012 Ill App (3d) 110200 ..............9,10,12

*Corcoran-Hakala,* 362 Ill. App. 3d 523, 524 (2d Dist. 2005) ........................................................9

*Whitaker v. Ameritech Corp.,* 129 F.3d 952 (7th Cir. 1998) (distinguished) ............................11,12

*YMCA of Warren County v. Middland Architects, Inc.,* 174 Ill.App.3d 966
(3d Dist. 1998) (distinguished) ......................................................................................................12

*Davis v. Lowery,* 228 Ill.App.3d 660 (5th Dist. 1992) (distinguished) .........................................12

*Carey v. Neal, Cortina and Assoc.,* 216 Ill.App.3d 51, 61 (1st Dist. 1991) (distinguished) .........12

i

**B. The Trial Correctly Found That Doherty's Claims Were Adjudicated on the Merits.**........................................................13

*Housing Authority for LaSalle Co. v. YMCA of Ottawa*, 101 Ill. 2d 246, 254 (1998)...................13

*Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008) ...................13

*Richter v. Prairie Dairy Farms, Inc.*,2016 IL 119518 (distinguished)...................14

*BankFinancial v. Tandon*, 2013 IL App (1st) 113152 (distinguished)...................14

*Flores v. Dugan*, 2013 IL App (1st) 113152 (distinguished) ...................14

**C. There is Identify Between the Parties** ........................................................**15**

*Ross Advertising, Inc.*, 2012 Ill App (3d) 110200 ¶35 ...................16

*Langone v. Schad, Diamond and Shedden, P.C.*, 406 Ill.App.3d 820, 832 (1st Dist. 2010)...................16

*Clark & Leland Condomium, LLC v. Northside Comm. Bank*, 110 F.Supp.3d 866 873 (N.D. Ill. 2015)...16

**D. Policy Considerations** ........................................................**16**

*Arvia*, 209 Ill.2d at 533 ...................16

*Piagentini v. Ford Motor Corp.*, 387 Ill.App.3d 890, 890 (1st Dist. 2009) ...................16

**III. Alternatively, the Trial Court's Dismissal of the Amended Complaint With Prejudice Should be Affirmed on Numerous Other Grounds.** ...........**17**

*Alpha School Bus Co., Inc v. Wagner*, 391 Ill.App.3d 722, 735 (1st Dist. 2009) ...................17

**A. Doherty Forfeited Objections to Alternative Grounds for Dismissal Set Forth in Defendants' Motion to Dismiss** ........................................................**17**

*IL. Sup. Ct. R. 341(h)(7)* ...................17

*Richard v. Nederlander Palace Acquisition, LLC*, 2015 IL App (1st) 143492 ¶30 ...................18

**B. Doherty Has Not, and Cannot, Allege He Suffered Damages, And the Note and Extensions Attached to His Amended Complaint Conclusively Demonstrate He did Not Sustain Any Damages.** ........................................................**18**

*Kopnick v. JL Woode Mgnt. Co., LLC*, 2017 IL App (1st) 152054 ¶ 31...................19

*Hamer v. Lentz*, 132 Ill. 2d 49, 62 (1989) ........................................................................20

*In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161, 1164 (3d Dist. 2007) ......................20

*Cheney v. Ricks*, 168 Ill. 533 (1897).....................................................................................20

*Garrett v. Peirce*, 74 Ill. App. 225 (2d Dist. 1897) .............................................................20

**C. Doherty Lacks Standing to Assert His Claim Which Are
Premised Upon the Promissory Note ...........................................................21**

*Glisson v. City of Marion*, 188 Ill.2d 211, 220 (1999) .........................................................21

*In re: Estate of Wellman*, 174 Ill. 2d 335 (1996)..................................................................21

*Performance Elec., Inc. v. CIB Bank*, 371 Ill.App.3d 1037, 1040 (1st Dist. 2007) ...............21

*Northern Trust Co. v. VIII South Michigan Assoc.*, 276 Ill.App.3d 355, 363 (1st Dist. 1995) ...................22

*Mid-State Fertilizer Co v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1336-37 (7th Cir. 1989) ......22

*Continental Bank N.A v. Modansky*, 129 B.R .159, 161 (N.D. Ill. 1991)................................22

**D. Doherty's Claims All Relate to Conduct of Prior Litigation Which
Cannot be Re-Litigated in the Second Law Action ........................................23**

*Johnson v. Johnson & Bell, Ltd., 2014 IL App (1ˢᵗ) 122677*, ¶ 19.....................................23,24

*Harris Trust & Savings Bank v. Phillips*, 154 Ill. App. 3d 574, 585 (1ˢᵗ Dist. 1987)................23

**E. Doherty Does Not and Cannot State a Cause of Action
for Breach of Contract............................................................................24**

*Teachers Ins. & Annuity Ass'n of America v. LaSalle National Bank*, 295
Ill. App. 3d 61, 73 (2ᵈ Dist. 1998) ........................................................................................24

*Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1060 (4th Dist. 2000) .......................24

*Gore v. Indiana Ins. Co.*, 376 Ill. App. 3d 282, 286-87 (1st Dist. 2007).................................24

*Anderson v. Burton Associates, Ltd.*, 218 Ill. App. 3d 261, 267 (1ˢᵗ Dist. 1991) .......................24

**F. Doherty Cannot Assert A Claim of Forgery.............................................25**

720 ILCS 5/17–3 .......................................................................................................................25

*People ex rel. Davis v. Vazquez*, 92 Ill.2d 132, 150 (1982)............................................................25

*People ex rel. Carey v. Cousins*, 77 Ill.2d 531, 539 (1979)............................................................25

*People v. Pankey*, 94 Ill. 2d 12, 16 (1983) ....................................................................................25

*Moore v. Lumpkin*, 258 Ill.App.3 980, 989 (1st Dist. 1994). ....................................................25,26

*McGrath v. CCC Information Services, Inc.*, 314 Ill.App.3d 431, 442 (1st Dist. 2000)...............26

*Parra v. Tarasco, Inc.*, 230 Ill.App. 3d 819, 826 (1st Dist. 1992) ...............................................27

      **G.   Doherty Cannot Assert a Claim of "Excessive Fees"**................................**27**

      **H.   Doherty Cannot Assert a Consumer Fraud Count**.................................**27**

815 ILCS 505/10a..............................................................................................................................27

*Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*,
275 Ill. App. 3d 452, 459 (2ᵈ Dist. 1995) .......................................................................................28

*Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (1ˢᵗ Dist. 2009)...................28

815 ILCS 505/10a(e)..........................................................................................................................28

*McCready v. Illinois Secretary of State*, 382 Ill. App. 3d 789, 798 (3d Dist. 2008) ...................28

      **I.   Doherty Forfeited Any Malicious Prosecution Argument** ..........................**28**

IL. Sup. Ct. R. 341(h)(7) ....................................................................................................................28

*Richard v. Nederlander Palace Acquisition, LLC*, 2015 IL App (1st) 143492 ¶30 ......................28

    **IV. Any Dismissal on Grounds Other Than *Res Judicata***
    **Should be With Prejudice** ..............................................................................**28**

*RBS Citizens, N.A. v. RTG-Oak Lawn, LLC*, 407 Ill.App.3d 183, 192 (1st Dist. 2011)................28

*1515 North Wells, L.P. v. 1513 North Wells, L.L.C.*, 392 Ill.App.3d 863, 870 (1st Dist. 2009) .................28

*Terry v. Metropolitan Pier and Exposition Authority*, 271 Ill.App.3d 446, 456 (1st Dist. 1995)............29

*Charles v First Nat. Bank of Blue Island*, 327 Ill.App.3d 399, 401-02 (1st Dist. 2002) .....................29

    **IV. Conclusion**..........................................................................................................**30**

## ISSUES PRESENTED FOR REVIEW

I.   Whether the Trial Court ruled correctly in dismissing Counts I through IV of Plaintiff's Amended Complaint with prejudice based upon *res judicata*.

II.  Assuming, for the sake of argument that *res judicata* does not apply to Counts I through IV, whether alternative grounds exist to affirm the Trial Court's dismissal.

## STATEMENT OF FACTS

Plaintiff Patrick D. Doherty ("Doherty") is an attorney licensed to practice law in the State of Illinois. R. C007. On or about April 3, 2006, Doherty and his business partner, John Farano, Jr. ("Farano") organized a limited liability company entitled Worth Conversion, LLC ("Worth"), with Doherty and Farano as its sole members. On or about April 17, 2006, Worth obtained a loan from Washington Federal Bank for Savings ("WFB") (the "Worth Loan"), evidenced by a promissory note dated April 17, 2006 (the "April 2006 Note"). R. C192 (attached to Doherty's amended complaint). Thereafter, Worth defaulted under the terms of the Note extensions thereof and, on March 4, 2014, WFB, through its attorneys Crowley & Lamb, P.C. ("C&L"), filed suit in the Circuit Court of Cook County, Law Division against Worth (and others), Case No. 14 L 2411 (the "First Law Action") R. C077. Doherty and Farano were named as additional defendants in the First Law Action based on their guaranty of the Note. R. C125-26.

On July 9, 2014, WFB voluntarily dismissed all counts of the First Law Action Complaint except three counts related to Worth's breach of the Note and the breach of guaranty counts against Doherty and Farano. R. C130. On August 5, 2014, Doherty filed an Answer and Affirmative Defenses on behalf of "Defendant's", alleging in part that WFB, without the consent of Worth or Doherty, executed documents to extend the Worth Loan. R. C315. Specifically the affirmative defenses alleged:

> 1. The Plaintiff without Defendant's consent executed documents to extend the loan and charge loan origination fees and an interest rate that was not agreed upon by the parties.
>
> 2. The Plaintiff called due the loan prior to expiration without any missed payments or good cause, for a loan in good standing.

3. The Plaintiff through its attorney overcharged and filed multip[l]e foreclosures against Defendants to cause the Defendants to incur unreasonable charges.

4. The Plaintiff has failed to tender an itemized breakdown of loans repaid within thirty (30) days despite numerous requests which is in violation of the Fair Debt and Collection Act, as well as, violation of Federal Lending Laws.

R. C315.

On August 27, 2014, WFB obtained a default judgment in the First Law Action against Farano on his guaranty for the full amount of Worth's debt. R. C317. On June 10, 2015, Doherty sent a letter to C&L stating that he "intend[ed] on filing a Complaint for Breach of Contract, Forgery, Excessive Fees, Consumer Fraud etc." See Doherty's Opening Brief asserting "Almost immediately prior to the presentation of the Bank's Motion to Dismiss, Doherty forward[ed] to Bank's counsel an expert report explicitly stating that his signature was forged by Bank on the Loan Documents *and his intent to file suit as a result thereof*") (emphasis added). Appellant Brief at 3. A copy Doherty's letter threatening to sue prior to the First Law Action being dismissed referenced in his opening brief is attached hereto as Exhibit A. This letter is dated June 10, 2015 and referenced the First Law Action. Ex. A ("re 14 L 2411"). Five days later, on June 15, 2015, the court entered an order granting WFB's motion and dismissing the remaining counts of the First Law Action (against Worth and Doherty). R. C319. Doherty did not object to the entry of the June 15, 2015 Order nor did Doherty file the causes of action he stated he 'intended to file' in his June 10, 2015 letter. The August 27, 2014, default judgment from the First Law Action was not vacated and remains a final order.

Over one year later, on June 28, 2016, Doherty filed the instant suit (hereafter "Second Law Action") asserting causes of action that were raised (either by affirmative

3

defense or Doherty's June 10, 2015 letter) in connection with the First Law Action. R. C003. Specifically, Doherty, in his original complaint asserted causes of action for Breach of Contract, Forgery, Excessive Fees, Fraud, and a cause of action for legal malpractice. *Id.* All counts of Doherty's complaint essentially argue that the 2010 loan extension was forged and Doherty incurred excessive attorney fees, court costs and loan fees as a result of the forgery and prior lawsuits based upon forged documents, including the First Law Action. R. C003-007 ¶5,11,13,15,24. Importantly, the five counts of the complaint are based upon the same facts as the four affirmative defenses raised in the First Law Action. Compare R. C003-007 ¶5,11,13,15,24 to R. C315. What is more, the five counts of the complaint are based upon the same facts, and allege substantially the same causes of action, as Doherty's June 10, 2015 letter to C&L during the First Law Action which referenced the First Law Action and in which Doherty stated he intended to file these causes of action against Defendants. Ex. A hereto.

In response to Doherty's complaint in the Second Law Action, Defendants filed a Motion to Dismiss (R. C048), and on August 22, 2016, the trial court ("Trial Court') entered an order dismissing Doherty's original complaint, but granting Doherty leave to file an amended complaint. R. C224. Subsequently, on August 31, 2016, Doherty filed his amended complaint, in which he asserted the same causes of action for Breach of Contract, Forgery, Excessive Fees, and Fraud, and substituted a claim for malicious prosecution in lieu of his original claim for legal malpractice. R. C187. Other than minor changes to the Breach of Contract claim (Count I), all remaining allegations were identical to those in the original complaint. Compare R. C003 to R. C187. On September 13, 2016, Defendants filed their Motion to Dismiss the amended complaint and for

sanctions. R. C225. All defendants raised this ambiguity in their motion to dismiss the amended complaint. R. C228.

October 12, 2016, the Trial Court entered an Order granting Defendants' Motion to Dismiss the Amended Complaint and dismissing Doherty's Amended Complaint with prejudice (the "Order") R. C341. In support of its ruling, the Trial Court held that *res judicata* barred Counts I – IV of Doherty's claims in the present suit. R. C342. Count V (asserting malicious prosection against Crowley & Lamb, P.C only) was dismissed with prejudice because Doherty failed to establish all elements needed to assert said cause of action.

Thereafter, on November 9, 2016, Doherty filed a Motion to Reconsider in an effort to harass Defendants and unnecessarily increase their costs of litigation. R. C346. On December 20, 2016, the Trial Court denied Doherty's motion to reconsider as to all counts of his amended complaint. R. C412. On January 17, 2017, Doherty filed a notice of appeal. R. C. 413. While not specified in the notice of appeal, Doherty's appellate brief is limited in scope to Counts I through IV of his amended complaint. Doherty does not appeal the dismissal of Count V for malicious prosection.

On or about December 15, 2017, WFB was closed by the FDIC. Exhibit B. The FDIC has informed counsel for Defendants John Gembara, Jane Tran, and Crowley & Lamb, P.C. that the FDIC will retain separate counsel to represent it in this appeal. Therefore this brief is not filed on behalf of WFB. Defendants John Gembara, Jane Tran, and Crowley & Lamb, P.C., however, in this response brief have addressed all counts of Doherty's complaint because it is ambiguous as to which counts are against which

Defendants. Doherty's amended complaint does not define the term 'Defendants' and seeks relief in all counts against 'Defendants' or an unspecified 'Defendant.' R. C187.

**ARGUMENT**

**I. Standard on Motions to Dismiss**

In considering a motion to dismiss brought under 735 ILCS 5/2-619, a court must take all well-pleaded allegations as true. *Andrews v. Mid-America Bank & Trust Co.*, 152 Ill. App. 3d 139, 141 (5th Dist. 1987). "[H]owever, conclusions of law or fact unsupported by allegations of specific fact upon which the conclusions rest are not admitted." *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 44 (1st Dist. 1990). Moreover, in a motion to dismiss, the liberal construction provisions do not apply where the complaint fails to allege facts sufficient to state a cause of action. *See Knox College v. Celotex Corp.*, 88 Ill.2d 407, 409 (1981).

"Section 2-619(a)(9) provides that a defendant may file a motion for dismissal on the ground that 'the claim asserted against defendant is barred by other affirmative matter avoiding the legal effect or defeating the claim.'" *Doherty v. Kahn*, 289 Ill. App. 3d 544, 565 (1st Dist. 1997), quoting 735 ILCS 5/2-619(a)(9) (West 1992). "'Other affirmative matter' is something in the nature of a defense which negates an alleged cause of action completely or refutes crucial conclusions of law or conclusions of material fact unsupported by allegations of specific fact contained in or inferred from the complaint." *Id. citing Andrews*, 152 Ill. App. 3d at 141.

As the court in *Orman v. Charles Schwab & Co.*, 285 Ill. App. 3d 937 (1st Dist. 1996), held, "'[t]he purpose of a motion to dismiss under section 2-619 *** is to afford litigants a means to dispose of issues of law and easily proved issues of fact at the outset

of a case." *Id.* at 939, *quoting Zedella v. Gibson*, 165 Ill. 2d 181, 185 (1995). Such a motion can be supported by affidavit or other evidentiary materials. *Epstein v. Chicago Board of Education*, 178 Ill. 2d 370, 383 (1997). Here, all of Doherty's claims fail to withstand 2-619 scrutiny and the dismissal with prejudice should be affirmed.

## II. The Trial Court Did Not Err in Dismissing All Counts of Plaintiff's Complaint With Prejudice Because the Complaint is Barred by *Res Judicata.*

*Res judicata* applies when: (1) a final judgment on the merits was rendered by a court of competent jurisdiction; (2) there is an identity of parties or their privies; and (3) there is an identity of causes of action. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 411 (2002). *Res judicata* prevents repetitive litigation and also protects parties from being forced to bear the unjust burden of re-litigating essentially the same case. *Arvia v. Madigan*, 209 Ill.2d 520, 533 (2004).

### Summary of *Res Judicata* Argument

The Trial court correctly held that *res judicata* barred all of Doherty's claims. During the First Law Action, Doherty raised the same claims that are the subject of the instant proceeding by filing affirmative defenses and by sending a letter to WFB threatening to file these exact claims in the First Law Action. Appellant Brief at 3 (referencing letter threatening to sue); Ex. A hereto. Therefore he is barred from re-raising the issues in this Second Law Action. Second, Doherty's claims, which he filed as affirmative defenses in the First Law Action, by the very nature of an affirmative defense, seek to nullify WFB's prior judgment on the Farano Guaranty entered in the First Law Action and therefore are barred from being raised in this Second Law Action by *res judicata*.

## A. The Court Correctly Found Identity in the Causes of Action

The Trial Court correctly found identity in the cause of action for a number of reasons. First, an identity of cause of action exists because, during the First Law Action, Doherty threatened to file the same claims which are the subject of this Second Law Action against Defendants. During the First Law Action, on June 10, 2015, Doherty sent a letter to C&L stating the Doherty "intend[ed] on filing a Complaint for Breach of Contract, Forgery, Excessive Fees, Consumer Fraud etc." Appellant Brief at 3 (referencing letter threatening to sue); Ex. A hereto. On June 15, 2015, five days later, the Trial Court entered an order granting WFB's motion and dismissing the remaining counts of the First Law Action (against Worth and Doherty). R. C319. Doherty did not object to the entry of the June 15, 2015 order nor did Doherty file the causes of action he threatened to file in his June 10, 2015 letter prior to the June 15 dismissal order. Where a party introduces an issue into a prior litigation which is resolved by a final judgment but then fails to pursue that issue, they are barred from re-litigating the issue in a separate second suit. *Woolsey v. Wilton*, 298 Ill.App.3d 583, 584 (3d Dist. 1998) (*res judicata* barred second suit for attorney fees where plaintiff was given leave to file a counter claim for attorney fees in first suit but failed to do so). Because Doherty previously raised the claims which are the subject of this Second Law Action in his June 10, 2015 letter during the First Law Action, he is barred from raising them again in this Second Law Action.

Second, the Trial Court correctly found an identity of cause of action because Doherty's claims in this Second Law Action seek to nullify WFB's final judgment against Farano it obtained in the First Law Action. Doherty contends that the Trial Court erred by finding that there was an identity between the First Law Action and the present

8

action. In support of his position, Doherty asserts that he has the option of filing a new suit because in Illinois, counterclaims are permissive such that a defendant need not immediately assert his rights. Unfortunately for Doherty, this is not a complete statement of Illinois law. While counterclaims are generally permissible, they are mandatory under certain facts. Specifically, *res judicata* bars subsequent claims if successful prosecution of those claims would in effect nullify the judgment entered in the initial action. *Ross Advertising, Inc. v. Heartland Bank and Trust Co.,* 2012 Ill App (3d) 110200 ¶35; *see also Corcoran-Hakala,* 362 Ill. App. 3d 523, 524(2d Dist. 2005). In *Ross Advertising,* the Illinois Appellate court affirmed dismissal of a lawsuit by a borrower and guarantors alleging various causes of action against a lender and its loan officer where the lender had previously obtained judgments against the borrower and guarantors. *Ross Advertising, Inc.,* 2012 Ill App (3d) 110200 ¶30-40. The Appellate Court held that the suit was barred by *res judicata* because borrower and guarantors' causes of action were related to the same loan and guaranties that were litigated in the lender's earlier suits, and could nullify the earlier judgments in favor of lender if granted. *Id.*

Here, Doherty's causes of action relate to the same loan that was previously litigated, and what is more, a finding for Doherty in this Second Law Action would effectively negate the default judgment in the First Law Action affirming WFB's right to collect the full amount of Worth's debt due under the Note. Doherty's complaint in this Second Law Action attempts to attack both WFB's right to recover on the Note and the amounts due on the Note and guaranties. R. C187 at ¶2,10 13,15 (asserting forgery and on the Note, as well as excessive fees related to the note).

Indeed, in the First Law Action, Doherty raised these matters in two instances in an attempt to defeat PNC's right to recover on the note and guaranties which were the subject of the First Action (and the subject of WFB's judgment against Farano). First, he specifically pled forgery and the excessive fees as affirmative defenses. R. C315. Second, on June 10, 2014, while the First Law Action was pending, he sent a letter to counsel for Defendants which specifically referenced the First Law Action (14 L 2411) stating that he intend to file causes of action for breach of contract, forgery, excessive fees, consumer fraud. Appellant Brief at 3 (referencing letter threatening to sue); Ex. A hereto. Accordingly, Doherty's claims are nothing more than an attempt to defeat the judgment in the First Law Action, and therefore are barred by *res judicata*.

Perhaps in recognition of the flaw in his position, Doherty's amended complaint in the Second Law Action misrepresents the timing of when Doherty became aware of the alleged forgery. Doherty's amended complaint states "Plaintiff did not learn of the forgery until the bank's voluntarily non-suited 14 L 2411 in June of 2015." R. C188 ¶5. This pleading is false. The First Law Action was non-suited on June 15, 2015. R. C319. Five days earlier Doherty sent a letter to Defendants referencing the First Law Action (14 L 2411) stating that he intended to file various causes of action against defendants including breach of contract, forgery, excessive fees, and consumer fraud. Ex. A hereto. What is more, Doherty pled an affirmative defense based upon the alleged forgery on August 5, 2014 in the First Law Action. R. C315 ¶1.

The trial court correctly recognized this. In granting the motion to dismiss, the Trial Court stated "Although Plaintiff defended the first lawsuit on the grounds that Bank did not have consent to extend the loan, Plaintiff alleges he did not learn of the Bank's

forgery until after Bank dismissed Plaintiff from the first lawsuit." R. C342. The Trial Court saw through Doherty's misrepresentation and correctly held that Doherty's claims in the Second Law Action, which he has previously used as defenses in the First Law Action, by the very nature of a defense, were attempting to nullify WFB's earlier judgment in the First Law Action. Specifically the Trial Court stated "Plaintiff here raised defenses and objections to Defendants claims in the first lawsuit, and those defenses now make up the entirety of four counts of Plaintiff's amended complaint. Plaintiff supports each theory of recovery with facts that revolve around Worth's default on the promissory note signed in 2006." R. C343.

Doherty's reliance on *Whitaker v. Ameritech Corp.*, 129 F.3d 952 (7th Cir. 1998) is misplaced and ignores the allegations he actually pled. Unlike *Whitaker's* FDCPA claim relating to alleged injuries incurred during collection of money which was indisputably owned, Doherty's causes of action (and prior affirmative defenses) attempt to dispute the fact of whether money is owed because of allegedly forged documents.

Indeed, Doherty's pleadings demonstrate that he is attempting to defeat WFB's right to collect on the note and guaranties rather than suing on collection conduct like in *Whitaker*. In Second Law Action, Doherty does not make a FDCPA claim. Rather, his first claim is a breach of contract, which contract was already litigated in the First Law Action. Compare R. 187-88, 192 (asserting breach of April 17[1], 2006 $400,000 note and amendments and extensions thereto) to R. C346 (Doherty's Motion to Reconsider alleging "In the complaint filed in the Law Action the Bank and its counsel Crowley & Lamb fraudulently claimed that Doherty defaulted [on] his alleged Guaranty of the

---

[1] The body of the Amended Complaint states April 16, 2006, but the note attached to the amended complaint as Exhibit A is dated April 17, 2006. R. C187,192.

alleged promissory note dated April 17, 2006 in the original amount of $400,000...and the forged extensions thereof.")  The second (forgery), third (excessive fees "based upon this forgery" (R. C189 ¶13), and forth counts (Consumer Fraud) of the amended complaint likewise are all premised upon the alleged forgery.  R. C187-91 ¶ 8,13,15; see also ¶7,12,14 (which incorporate the breach of contract and forgery counts).  Since all counts of the amended complaint are premised upon the alleged forgery of the 2010 extension rather than collection efforts, *Whitaker* is inapplicable.

Here, unlike *Whitaker*, applying 'same transaction' (or even the 'same evidence' test) results in a bar under *res judicata*.  Specifically, the 2010 extension transaction and all the evidence related to the alleged forgery of same is central to all of Doherty's claims.  These issues were already raised in the First Law action through Doherty's affirmative defense and June 10, 2015 letter referencing the First Law Action.  As such the instant case is more analogous to *Ross Advertising, Inc.*, 2012 Ill App (3d) 110200 ¶35-36 (*supra* 8-9) wherein the borrower and guarantor's later filed complaint sought relief that would have nullified liability or the amounts due on a prior judgment.

The remaining cases cited by Doherty do not help his position. *YMCA of Warren County v. Middland Architects, Inc.*, 174 Ill.App.3d 966 (3d Dist. 1998) is inapplicable because it did not involve *res judicata*. *Davis v. Lowery*, 228 Ill.App.3d 660 (5th Dist. 1992) and *Carey v. Neal, Cortina and Assoc.*, 216 Ill.App.3d 51, 61 (1st Dist. 1991) are easily distinguishable because they do not involve a counterclaim that seeks to nullify an earlier judgment.  The court in *Carey* expressly stated "The above cases involve a litigant's collateral attack on a prior adjudication of rights in real estate between the same or successor parties. That is not the situation before us." 216 Ill.App.3d at 61.

In contrast to *Davis* and *Carey*, Doherty's pleadings make clear he is attempting to nullify WFB's prior judgment both in terms of liability and the amount. The essence of Doherty's amended complaint is that WFB had no right to file the three foreclosures against Doherty because they were premised upon a forged extension. R. C187 ¶2,11,13,15,23-26. Such an argument attempts to defeat WFB's right to collect on the Note and is a thinly veiled collateral attack on the final judgment in the First Law Action.

The fact that Doherty raised the alleged forgery as an affirmative defense in the First Law action clearly establishes that this Second Law Action is an attempt to nullify WFB's prior judgment. Doherty's first affirmative defense in the First Law Action states: "The Plaintiff without Defendant's consent executed documents to extend the loan and charge loan origination fees and an interest rate that was not agreed upon by the parties." R. C315. The purposes of this defense, indeed the very nature of a defense is to nullify or defeat right to collect on the Note which was the subject of the First Law Action. Doherty's effort to re-assert this defense as a complaint against Defendants is therefore barred by *res judicata*.

## B. The Trial Court Correctly Found That Doherty's Claims Were Adjudicated on the Merits.

Next, Doherty asserts that the Trial Court erred by finding that Doherty's claims are barred by *res judicata* because there has not been a final judgment on the merits; however, the default judgment entered in the Law Action operates as a final judgment on the merits for purposes of *res judicata. See Housing Authority for LaSalle Co. v. YMCA of Ottawa*, 101 Ill. 2d 246, 254 (1998) ("a default judgment is a judgment on the merits"). A 2-1009 voluntary dismissal terminates the entire action and makes all prior final orders immediately appealable. *Hudson v. City of Chicago*, 228 Ill. 2d 462, 467 (2008).

In this case, the First Law Action was terminated following the June 15, 2015 Order (R. C319) dismissing the First Law Action, leaving only the enforcement of the August 27, 2014 default judgment entered against Farano. R. C317. As such the August 27, 2014 order was final.

Doherty relies heavily on *Richter v. Prairie Dairy Farms, Inc.,*2016 IL 119518 in support of his proposition that there was not a valid and final judgment in the First Law Action; however, *Richter* is inapposite, and Doherty omits pertinent factual information in his analysis. Defendants acknowledge that in *Richter*, the court held that plaintiff's voluntary dismissal of its complaint in the first round of litigation did not amount to a final judgment on the merits. Nevertheless, in the first round of litigation in *Richter*, the circuit court did not enter an order dismissing the action or any other order which could be deemed "final" for purposes of *res judicata*, such that the rights of the parties were fixed. *See Richter, supra.* Accordingly, because there was no final order, Richter did not present the same issues surrounding *res judicata* which are present in this case. Thus, *Richter* is dissimilar to this case and should not be afforded any great weight.

Unlike *Richter*, the instant matter involves a final adjudication on the merits, because the August 27, 2014 default judgment affirmed WFB's right to collect the full amount of Worth's debt due under the allegedly fraudulent Note. R. C317. As such, had the Trial Court allowed the Second Law Action to stand, it would upend the rights of the parties which were fixed and determined in the First Law Action; namely, WFB's right to collect the full amount of Worth's debt. Furthermore, although Doherty cites *BankFinancial v. Tandon,* 2013 IL App (1st) 113152 and *Flores v. Dugan,* 2013 IL App (1st) 113152 in support of his position, these cases are also inapposite as they involved

only stand-alone voluntary dismissals. Neither case involved the entry of a final order; thus, neither case addressed the issues surrounding *res judicata* which are present in this case.

Final judgments on the merits entered in a prior suit are not to be treated as a nullity. The August 27, 2014 default judgment entered in the Law Action fixed the rights of the parties and affirmed WFB's right to collect the full amount due under the Note, leaving only enforcement of the final judgment. R. C317. The consequence of this final judgment on the merits is that Doherty's claims are barred by *res judicata*.

**C. There is Identity Between the Parties**

Doherty finally contends that the Court erred because there is no identity between the parties or their privities. This argument fails. In the First Law Action, WFB was the plaintiff and Doherty was a defendant. In the Second Law Action Doherty was the plaintiff and WFB was the main defendant.

The inclusion of additional defendants in the Second Law Action does not change the analysis. Doherty's prayer for relief in the Second Law Action is predicated on the same Note which was the subject of WFB's claims against Doherty in the First Law Action. Compare R. 187-88, 192 (asserting breach of April 17[2], 2006 $400,000 note and amendments and extensions thereto) to R. C346 (Doherty's Motion to Reconsider alleging "In the complaint filed in the Law Action the Bank and its counsel Crowley & Lamb fraudulently claimed that Doherty defaulted [on] his alleged Guaranty of the alleged promissory note dated April 17, 2006 in the original amount of $400,000...and the forged extensions thereof.") Even though Gembara, Tran, and C&L were not named as

---

[2] The body of the Amended Complaint states April 16, 2006, but the note attached to the amended complaint as Exhibit A is dated April 17, 2006. R. C187,192.

parties to the Frist Law Action, Doherty's suit is grounded on allegations that establish a mutual relationship of "fraud and forgery" between WFB and these parties. Therefore, WFB represents the same legal interests as Gembara, Tran, & C&L, and the parties must be considered in privity. *Ross Advertising, Inc.*, 2012 Ill App (3d) 110200 ¶35 ("When a prior judgment is a bar to a claim against an employer, a claim against an employee, predicated upon the same acts, is also barred"); *Langone v. Schad, Diamond and Shedden, P.C.*, 406 Ill.App.3d 820, 832 (1st Dist. 2010); *Clark & Leland Condominium, LLC v. Northside Comm. Bank*, 110 F.Supp.3d 866 873 (N.D. Ill. 2015) ("Illinois law clearly establishes that employees, attorneys, and officers of a defendant entity in a prior suit are in privity with the defendant for purposes of *res judicata*")

## D. Policy Considerations

The policy behind *res judicata* is "to promote judicial economy by preventing repetitive litigation and to protect parties from being forced to bear the unjust burden of re-litigating essentially the same case. *Arvia*, 209 Ill.2d at 533. Yet, the doctrine of *res judicata* will not be applied where it would create inequitable and unjust results. *Piagentini v. Ford Motor Corp.*, 387 Ill.App.3d 890, 890 (1st Dist. 2009). In this case, there is nothing inequitable or unjust about preventing Doherty from harassing the Defendants and pursuing pointless litigation. Doherty's claims could have been decided over two years ago in the First Law Action, in which the rights of the parties were fixed and determined. Indeed, Doherty had his "day in court" during the First Law Action. In the First Law Action, he raised affirmative defenses based upon the alleged forgery (R. C315) and threatened to file counterclaims based upon the alleged forgery (Appellant Brief at 3 (referencing letter threatening to sue); Ex. A hereto) but elected not to file his

counterclaims. The Trial Court recognized Doherty's attempt re-litigate these issues and thereby harass Defendants with the Second Law Action, and properly dismissed that amended complaint.

Ultimately, Doherty's "policy argument" in the Motion is rife with legal conclusions. Doherty has not offered any good reason to overturn the Trial Court's dismissal of his amended complaint beyond his own displeasure with the Court's ruling.

## III. Alternatively, the Trial Court's Dismissal of the Amended Complaint With Prejudice Should be Affirmed on Numerous Other Grounds.

Even if this Appellate Court were to overturn the Trial Court's application *of res judicata*, numerous alternative grounds exist in the record to affirm the Trial Court's dismissal of the amended complaint with prejudice. The appellate court can confirm a trial court ruling "on any basis in the record, regardless of whether the trial court relied on that basis and regardless of whether the trial court's reasoning was correct." *Alpha School Bus Co., Inc v. Wagner*, 391 Ill.App.3d 722, 735 (1st Dist. 2009). Here, the Trial Court dismissed Counts I through IV the Amended Complaint with prejudice based upon *res judiciata*. In doing so, it ended its analysis and did not reach the additional arguments raised in Defendants' motion to dismiss. R. C393. In addition to the *res judicata* argument, Defendants' moved to dismiss the amended complaint on a multitude of other grounds. R. C225-39.

## A. Doherty Forfeited Objections to Alternative Grounds for Dismissal Set Forth In Defendants' Motion to Dismiss.

Doherty has forfeited his objections to Defendants' alternative grounds to dismiss the amended complaint by not addressing them in his opening brief. In addition to *res judicata*, Defendants set forth numerous alternative grounds to dismiss Doherty's

amended complaint. R. C225-39. Doherty did not address these alternative grounds in his opening brief and therefore has forfeited these objections. IL. Sup. Ct. R. 341(h)(7); *Richard v. Nederlander Palace Acqu. LLC*, 2015 IL App (1st) 143492 ¶30.

**B. Doherty Has Not, and Cannot, Allege He Suffered Damages, And the Note and Extensions Attached to His Amended Complaint Conclusively Demonstrate He did Not Sustain Any Damages.**

The assertion that Doherty, as a guarantor, incurred damages because of an allegedly forged extension of the Note is nonsensical, and is defeated by the Note and extensions attached to Doherty's amended complaint. Doherty's obligations under his guaranty were unchanged by the allegedly forged extension. He was liable for the full amount due on the Note both before and after the allegedly forged extension. Moreover, after the allegedly forged 2010 extension, he could have avoided any fees by paying the Note in full upon its original, non-extended maturity date. As further evidence that Doherty did not suffer any damages, WFB did not file suit to collect on Doherty's guaranty until March 4, 2014 which is three days after the March 1 maturity in the 2010 extension. R. C204; R. C077.

According to Doherty's pleadings, WFB extended credit to Worth Conversion, LLC in the amount of $400,000 as evidenced by a Note from Borrower to WFB dated April 17, 2006. R. C187 ¶1, 192. Doherty attached a copy of the Note to his amended complaint and admitted the extension of credit. *Id.* Doherty has not disputed that he guarantied payment of all amounts due on the Note.

As the basis for his damages, Doherty's amended complaint merely alleges that an 'extension' of the Note was forged in 2010, however the alleged extension only changed the maturity date and therefore Doherty could not have suffered any damages.

R. C204. There are no other changes in the terms of Note to cause harm to Doherty. Doherty attached the following exhibits to his complaints: the 2006 Note (R. C192); a May 1, 2007 extension extending the maturity to August 1, 2007 (R. C206); an August 1, 2007 extension extending the maturity to May 30, 2008 (R. C024) (only attached to original complaint); a May 5, 2008 extension extending the maturity to May 1, 2010 (R. C205); and a May 1, 2010 extension extending maturity to March 1, 2014. (R. C204). These exhibits control over the body of Doherty's pleadings. *Kopnick v. JL Woode Mgnt. Co.*, LLC, 2017 IL App (1st) 152054 ¶ 31.

Importantly each extension makes only one change to the underlying Note; that being to extend the maturity date. In fact, each extension expressly states "2. All other terms of the Note and Mortgage, not heretofore modified, shall remain in full force and effect. The Borrower agrees to continue to perform all of the covenants of the Borrower and Mortgagor under the terms of the original note and mortgage." R. C021-24; C204-06.

Since the only change to the note in the 2010 extension was to extend the maturity, Doherty, logically cannot have incurred any damages, even if the extension was forged. Doherty did not suffer any damages since his obligations under the guaranty did not change. He was liable for repay all amounts due on the $400,000 Note before the 2010 extension and he remained liable to pay all amounts due on the $400,000 Note after the 2010 extension.

Furthermore, any fee and costs incurred by Doherty as a result of the alleged forgery were incurred based upon his failure, both in his capacity as co-owner of the Borrower, and individually as a guarantor, to pay the Note in full upon its non-extended

maturity of May 1, 2010. R. C022. If he would have simply paid the Note in full on May 1, 2010 he would have avoided all the fees and costs he claims in this amended complaint. In fact, if the 2010 extension was forged as Doherty claims, Doherty should have paid the note in full on May 1, 2010 since he (having allegedly not signed the extension) would have been unaware of that the maturity date had been extended. Since the 2010 extension did not change any terms other than the maturity, he was already liable for any fees and costs he incurred in connection with his failure to pay the Note at maturity.

As additional evidence that Doherty could not have suffered any damages as a result of the 2010 extension, WFB did not file the First Law Action seeking to collect on Doherty's guaranty until March 4, 2014 which is three days after the Note, as modified by the 2010 extension matured. R. C077; R. C021.

Even assuming Doherty's conclusory assertion of damages is not defeated by the documents attached to his amended complaint, the damages claim still fails. Doherty overlooks the fact that no judgment was entered against him in the First Law Action and in fact all claims against Doherty in that action were voluntarily dismissed. R. C319.

Further, Doherty, an attorney (R. C007 "Attorney at Law") cannot claim any legal fees he incurred in defending the Law Action as damages since he appeared *pro se*. *See Hamer v. Lentz*, 132 Ill. 2d 49, 62 (1989) ("A lawyer representing himself or herself simply does not incur legal fees."); *In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161, 1164 (3[d] Dist. 2007) ("It is against public policy to allow an attorney to represent himself and charge for professional services in his own cause."); *Cheney v. Ricks,* 168 Ill. 533 (1897); *Garrett v. Peirce,* 74 Ill. App. 225 (2[d] Dist. 1897).

Additionally, Doherty's costs were paid as part of the nonsuit. As a result of Doherty's lack of damages, all five counts of his amended complaint were properly dismissed.

## C. Doherty Lacks Standing to Assert His Claims Which Are Premised Upon The Promissory Note

All five counts of Doherty's Amended Complaint are premised upon an alleged forgery of the 2010 extension of the Note. The only borrower on the Note is Worth Conversion, LLC; Doherty is not a borrower on that Note but is merely a guarantor. R. C192 ¶1. Doherty, who is the sole plaintiff in this Second Law Action therefore lacks standing. R. C187.

Lack of standing is an affirmative matter that is properly raised under section 2–619. *Glisson v. City of Marion*, 188 Ill.2d 211, 220 (1999). As set forth in *In re: Estate of Wellman*, 174 Ill. 2d 335 (1996):

> The doctrine of standing requires that a party, either in an individual or representative capacity, have a real interest in the action brought and in its outcome. The purpose of the doctrine is to ensure that courts are deciding actual, specific controversies and not abstract questions or moot issues. Standing "is not simply a procedural technicality" (59 Am.Jur.2d *Parties* § 30, at 416 (1987)), but rather is an aspect or a component of justiciability. The essence of the inquiry regarding standing is whether the litigant, either in an individual or representative capacity, is entitled to have the court decide the merits of a dispute or a particular issue. This court has repeatedly held that standing requires some injury in fact to a legally recognized interest.

*Estate of Wellman*, 174 Ill. 2d at 344-45 (citations omitted).

To assert an affirmative claim or counterclaim against a lender, a guarantor must establish that he suffered a direct injury as a result of the lender's alleged breach against the principal, which is independent from and not merely derivative of the resulting injury suffered by the principal. *Performance Elec., Inc. v. CIB Bank*, 371 Ill.App.3d 1037,

21

1040 (1st Dist. 2007); *Northern Trust Co. v. VIII South Michigan Assoc.*, 276 Ill.App.3d 355, 363 (1st Dist. 1995). Guarantors are similarly situated to other groups, such as shareholders, limited partners and creditors, none of which can proceed individually for alleged breaches against the principal. *Performance Elec., Inc.*, 371 Ill.App.3d at 1040 (holding guarantors lacked standing where guarantor's claims were based upon underlying note, not the guaranty). To allow guarantors to bring a cause of action based upon an alleged breach of the underlying note would allow a double recovery. *Mid-State Fertilizer Co v. Exchange Nat. Bank of Chicago*, 877 F.2d 1333, 1336-37 (7th Cir. 1989) (stating "[w]hen the injury is derivative, recovery by the indirectly-injured person is a form of double counting" and holding guarantors lacked standing).

Indeed Doherty's position here are similar as in *Continental Bank N.A v. Modansky*, wherein the court held the guarantors only suffered an indirect injury and therefore could not maintain counterclaims against a bank based upon an alleged breach of good faith and failure to comply with terms of the underlying note. 129 B.R .159, 161 (N.D. Ill. 1991). The court held that guarantors lacked standing because they only suffered an *indirect* injury. *Id.* (holding "[defendants] may very well have suffered an injury if [the bank] committed the alleged acts since the [defendants] were also officers and shareholders of the borrowers. But, in their capacity as *guarantors*, they would only have suffered an indirect injury.") (emphasis original).

Accordingly, Doherty, as a guarantor lacks standing to assert a breach of the Note (Count I); forgery of note extension (Count II), excessive fees (Count III), fraud (Count IV) and malicious prosecution (Count V).

**D. Doherty's Claims All Relate to Conduct of Prior Litigation Which Cannot Re-Litigated in Second Law Action.**

All counts of Doherty's amended complaint essentially assert that the First Law Action to collect on the Note was wrongful because WFB had no right to collect on the Note based upon an alleged forgery of the 2010 extension. See R. C187 at ¶5,11,13,15,24. Since the various counts of Doherty's amended Complaint are all premised upon Defendants' alleged actions in prior litigation, they were properly dismissed by the Trial Court. "There is no civil cause of action for misconduct which occurred in prior litigation." *Johnson v. Johnson & Bell, Ltd.*, 2014 IL App (1st) 122677, ¶ 19. "Petitions to redress injuries resulting from misconduct in judicial proceedings should be brought in the same litigation. The courts have said that public policy precludes a second lawsuit because otherwise there would never be an end to litigation. It is also improper for a trial court to review previous litigation which has gone on before another judge." *Harris Trust & Savings Bank v. Phillips,* 154 Ill. App. 3d 574, 585 (1st Dist. 1987). *Johnson.,* 2014 IL App (1st) 122677 ¶ 19. If Doherty had an issue with the prior litigation, he should have explored an Illinois Supreme Court Rule 137 motion for his alleged damages.

Similarly, Defendants herein are protected by an absolute privilege. *See Johnson*, 2014 IL App (1st) 122677, at ¶15-17 (plaintiff's claims for infliction of emotional distress and breach of contract barred by the absolute litigation privilege.) The issue of absolute privilege is treated as an affirmative defense that may be raised and determined in a section 2–619 motion. *Id.* at ¶15. The litigation privilege acts as a complete bar to a claim against a private litigant or attorney regardless of the defendant's motive or the unreasonableness of his conduct. *Id.* at ¶15.

23

While the litigation privilege traditionally barred claims for defamation against attorneys and litigants, in *Johnson*, the court extended the privilege to preclude claims of infliction of emotional distress, negligence, and breach of contract. *Johnson*, 2014 IL App (1st) 122677, at ¶15-17 *citing Barker v. Huang*, 610 A.2d 1341, 1349 (Del. 1992) (absolute litigation privilege barred non-defamation claims where all counts were predicated on same acts providing the basis of plaintiff's defamation claim). In this case, Doherty's claims against Defendants based upon court filings must fail since they relate to alleged conduct in litigation, which is absolutely privileged from suit.

**E. Doherty Does Not and Cannot State a Cause of Action for Breach of Contract**

Doherty's Amended Complaint asserts that defendants breached a duty of good faith and fair dealing by allegedly forging signatures on a renewal note. R. C188 ¶5. Putting aside the fact that Doherty lacks standing and cannot plead damages, this does not constitute a breach of contract. The implied duty of good faith and fair dealing "requires a party vested with contractual discretion to exercise that discretion reasonably and not arbitrarily, capriciously, or in a manner inconsistent with the reasonable expectations of the parties." *Teachers Ins. & Annuity Ass'n. of America v. LaSalle National Bank*, 295 Ill. App. 3d 61, 73 (2d Dist. 1998). This duty aids the construction of a contract susceptible to two meanings. The duty of good faith and fair dealing cannot be wielded to create a discretionary term or otherwise "read an obligation into the document that does not exist." *Bank One, Springfield v. Roscetti*, 309 Ill. App. 3d 1048, 1060 (4th Dist. 2000). Further, a breach of the duty of good faith cannot be established where no contractual discretion exists. *See Gore v. Indiana Ins. Co.*, 376 Ill. App. 3d 282, 286-87 (1st Dist. 2007); *see also Anderson v. Burton Associates, Ltd.*, 218 Ill. App. 3d 261, 267

(1st Dist. 1991) (dismissing counterclaim for breach of duty of good faith and fair dealing where counter-defendant had no discretion in performing his contractual obligations). Doherty does not and cannot allege that any Defendant had either contractual discretion under the Note related to the purportedly forged signature, or that that such discretion was exercised unreasonably. Therefore, Doherty's Complaint was properly dismissed with prejudice.

**F. Doherty Cannot Assert A Claim Of Forgery**

Forgery is not a civil cause of action but, rather, a crime under the Illinois Criminal Code. *See* 720 ILCS 5/17–3. Doherty expressly alleges that his forgery claim is brought under the criminal statute and against all Defendants. R. C0188 ¶ 8. Only the State's Attorney may prosecute crimes. "The decision whether to initiate any criminal prosecution at all as well as to choose which of several charges shall be brought are functions within the exclusive discretion of the State's Attorney. *People ex rel. Davis v. Vazquez* (1982), 92 Ill.2d 132, 150; *People ex rel. Carey v. Cousins*, 77 Ill.2d 531, 539 (1979); *People v. Pankey*, 94 Ill. 2d 12, 16 (1983). Doherty thus has no ability to bring any claim for forgery against any Defendant in this matter and all of his claims related to an alleged forgery should be dismissed with prejudice.

Further, Doherty has not argued or cited to any authority that 720 ILCS 5/17–3 creates a private cause of action, and indeed, it does not. 720 ILCS 5/17-3. While it is possible for the courts to determine that a private cause of action is implied in a statute, such action should be used sparingly and only "where it is clearly needed to effectuate the purpose of the statute." *Moore v. Lumpkin*, 258 Ill.App.3 980, 989 (1st Dist. 1994). "[T]he judiciary by implying causes of action is assuming policy-making authority, a

power more properly exercised by the legislature. The court should exercise such authority with due caution." *Id.* To determine whether private cause of action can be implied the court must examine: 1) whether the plaintiff is a member of the class that is the intended beneficiary of the act, 2) whether allowing private actions is consistent with the underlying purpose of the act, 3) whether plaintiff's injury is one the Act was designed to prevent, and 4) whether allowing private actions is necessary to provide an adequate remedy for violations of the Act. *McGrath v. CCC Information Services, Inc.,* 314 Ill.App.3d 431, 442 (1st Dist. 2000); *Moore*, 258 Ill.App.3 at 992-94[3]. All four of these elements must be satisfied before a private right of action under a statute will be implied. *Moore*, 258 Ill.App.3 at 989.

Even if Doherty had undertaken the analysis[4], he cannot not satisfy all four elements. Doherty cannot meet the first element because 720 ILCS 5/17–3 protects the general public rather than particular class of individuals. *Moore*, 258 Ill.App.3 at 992-94. Second, the purpose of the forgery criminal statute is to provide a criminal penalty for forgery. There is nothing in act that suggests its purpose is to create civil actions.

Next, Doherty cannot meet the third element because he has not, as previously set forth (*supra* p. 17), alleged any damages caused by the purported forgery. The third element expressly requires an injury. *McGrath.,* 314 Ill.App.3d at 442; *Moore*, 258 Ill.App.3 at 992-99.

As for the fourth element, an implied private cause of action does not exist where the remedies enumerated in the statue are sufficient to effectuate the statute's purpose. *Moore*, 258 Ill.App.3 at 996; *McGrath.,* 314 Ill.App.3d at 443 (criminal sanctions of fines

---

[3] *Moore* flips the second and third element.
[4] Doherty did not undertake raise this point in his opening brief and therefore it is forfeited. *Kiefer v. Rust-Oleum Corp.,* 394 Ill.App.3d 485, 492 fn2 (1st Dist. 2009)

or jail fulfill purpose so no implied civil action); *Parra v. Tarasco, Inc.*, 230 Ill.App. 3d 819, 826 (1st Dist. 1992) ($500 fine sufficient to meet purpose so no civil action implied); *Moore*, 258 Ill.App.3 at 996 (penalties in act sufficient to meet purpose so no civil action). In contrast, cases finding an implied private cause of action are generally limited to situations where the express penalties provide no incentive for compliance. *Moore*, 258 Ill.App.3 at 996. Since, as laid out in Doherty's amended complaint, 720 ILCS 5/17–3 provides for substantial penalties, including fines and prison time, there is no need for a civil action to achieve the statute's purpose. R. C188 ¶ (describing prison and monetary penalties).

**G. Doherty Cannot Assert A Claim Of "Excessive Fees"**

There is no statuary cause of action for 'excessive fees' and therefore this count should be dismissed with prejudice. Moreover, this count fails because it is premised upon the Doherty's claim of forgery (count II) which is also not a recognized cause of action. R. C189 ¶ 12-13 (alleging Doherty incurred excessive fees because of Defendants' lawsuits premised upon forgery). This 'excessive fees' would also fail because it Doherty, as set forth herein, (*supra* p. 17) cannot plead damages.

**H. Doherty Cannot Assert a Consumer Fraud Count**

Doherty's Consumer Fraud claim was properly dismissed because Doherty did not suffer damages, he lacks standing, and the claim is barred by the statute of limitations.

Count IV of Doherty's amended complaint is brought pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/10a. (the "CFA"). R. C190 ¶20. The CFA does not apply to every commercial transaction regardless of the

relationship between the parties. *Lake County Grading Co. of Libertyville, Inc. v. Advance Mech. Contractors, Inc.*, 275 Ill. App. 3d 452, 459 (2d Dist. 1995). "Only a person who suffers **actual damages** as a result of a violation of the Consumer Fraud Act may bring a private action." *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (1st Dist. 2009) (citations omitted) (emphasis added). Therefore, Doherty based upon a lack of standing since he is not a borrower on the Note, and a lack of damages, cannot maintain a consumer fraud count.

Additionally, the statute of limitations under the CFA is three years. 815 ILCS 505/10a(e); *McCready v. Illinois Secretary of State*, 382 Ill. App. 3d 789, 798 (3d Dist. 2008). The overlying premise of Doherty's amended complaint is that his signature on the 2010 loan extension was forged. Taking the allegation of fraud as true, Doherty, an attorney and sophisticated investor knew or should have known of the 2010 extension when the Note was not paid in full upon its maturity on 2010. R. C205 (May 5, 2008 extension extending loan to May 1, 2010 attached to Doherty's amended complaint). Therefore this 2016 claim is timed barred.

## I. Doherty Forfeited Any Malicious Prosecution Argument

Doherty does not address the Trial Court's dismissal of his malicious prosecution claim (R. C344) and therefore has forfeited the argument. IL. Sup. Ct. R. 341(h)(7); *Richard*, 2015 IL App (1st) 143492 ¶30

## IV. Any Dismissal on Grounds Other Than *Res Judicata* Should be With Prejudice

While it is true that Illinois has a liberal policy of allowing the amendment of pleadings, this right is not unlimited. *RBS Citizens, N.A. v. RTG-Oak Lawn, LLC*, 407 Ill.App.3d 183, 192 (1st Dist. 2011); *1515 North Wells, L.P. v. 1513 North Wells, L.L.C.*,

392 Ill.App.3d 863, 870 (1st Dist. 2009) (denying request for leave to amend where court determined moving party could not state cause of action as a matter of law). A court should deny a plaintiff's request to amend if it is apparent that even after amendment, no cause of action can be stated. *Terry v. Metropolitan Pier and Exposition Authority*, 271 Ill.App.3d 446, 456 (1st Dist. 1995) (denying request for leave to file third amended pleading). As set forth herein, the defects with Doherty's amended complaint cannot be cured. Therefore the dismissal with prejudice should be upheld.

Furthermore, the dismissal should be with prejudice because Doherty had ample time to bring these counterclaims. The First Law Action was filed in 2014. In connection with First Law Action, Doherty raised these same issues as affirmative defenses and threatened counterclaims. He then waited over a year after the First Law Action was dismissed to file this Second Law Action. Moreover, he already filed an amended complaint in this case. Since he has already had ample time to plead, the dismissal with prejudice should be affirmed. *Charles v First Nat. Bank of Blue Island*, 327 Ill.App.3d 399, 401-02 (1st Dist. 2002) (denying leave to file third amended complaint).

## V. CONCLUSION

Wherefore, for the foregoing reasons Defendants John Gembara, Jane Tran, and Crowley & Lamb, P.C., respectfully request this Court affirm the decision of the Trial Court.

Respectfully submitted,
JOHN GEMBARA, JANE TRAN, and
CROWLEY & LAMB, P.C.


By: /s/ Matthew L. Hendricksen
      One of Their Attorneys

James M. Crowley, Esq.
Matthew L. Hendricksen, Esq.
PLUNKETT COONEY, P.C.
221 N. LaSalle Street, Suite 1550
Chicago, Illinois 60601
(312) 670-6900
Attorney No. 41373
jcrowley@plunkettcooney.com
mhendricksen@plunkettcooney.com

No. 17-01-0161

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
FROM THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

PATRICK J. DOHERTY,                                    )
                        Plaintiff,                     )        No. 16 L 6379
                                                       )
                v.                                     )   Trial Court Judge:
                                                       )   Hon.Thomas R. Mulroy
WASHINGTON FEDERAL BANK FOR                            )
SAVINGS, JOHN GEMBARA, individually and as            )   Date of Final Order: 12/20/16
President of Washington Federal Bank, JANE TRAN,       )Notice of Appeal filed: 1/17/17
and CROWLEY & LAMB,                                    )
                                                       )

## NOTICE OF FILING

To:     Patrick Doherty
        Attorneys as Law
        7836 W. 103rd Street
        Palos Hills, Illinois 60465

        Grant Law, LLC
        230 West Monroe Street, Suite 240
        Chicago, IL 60606
        *Attorneys for FDIC*

        **PLEASE TAKE NOTICE** that on January 8, 2017 the undersigned counsel
caused to be filed with the clerk of the Illinois Appellate Court, First District,
Defendants-Appellees' Brief on Appeal, three true and correct copies of which are hereby
served upon you.


                                        /s/ Matthew L. Hendricksen


32

No. 17-01-0161

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
FROM THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - LAW DIVISION

| | |
|---|---|
| PATRICK J. DOHERTY,<br>Plaintiff,<br><br>v.<br><br>WASHINGTON FEDERAL BANK FOR<br>SAVINGS, JOHN GEMBARA, individually and as<br>President of Washington Federal Bank, JANE TRAN,<br>and CROWLEY & LAMB, | )    No. 16 L 6379<br>)<br>)<br>) Trial Court Judge:<br>) Hon.Thomas R. Mulroy<br>)<br>) Date of Final Order: 12/20/16<br>)Notice of Appeal filed: 1/17/17<br>) |

**CERTIFICATE OF SERVICE**

The undersigned certifies that three copies of the Appellee's Brief were served upon

To:    Patrick Doherty
        Attorneys as Law
        7836 W. 103rd Street
        Palos Hills, Illinois 60465

        Grant Law, LLC
        230 West Monroe Street, Suite 240
        Chicago, IL 60606
        *Attorneys for FDIC*

by United States First Class Mail, postage prepaid from 221 N LaSalle Street, Chicago,
Illinois 60601 on January 8, 2017 prior to the hour of 5:00 P.M.

                /s/ Matthew L. Hendricksen

# EXHIBIT A

06-10-15;05:19PM;                                    ;                # 1/ 1

# PATRICK J. DOHERTY, LLC.
## *Attorney at Law*

7826 West 103rd Street
Palos Hills, Illinois 60465
(708) 598-6626
Facsimile (708) 598-8778

June 10, 2015

*Via Facsimile (312) 494-6610*

James M. Crowley, Esquire
Crowley & Lumb, P.C.
221 N. LaSalle Street
Suite 1550
Chicago, Illinois 60601

   *Re:*  *F & D Services, Inc.*
       *14 L 2411*

Dear Mr. Crowley:

   Please be advised that I have yet to receive a response to my settlement proposal of June 4, 2015. In as such, I intend on filing a Complaint for Breach of Contract, Forgery, Excessive Fees, Consumer Fraud, ect.

   If you would like to discuss further, I will be in Court on June 15, 2015.

           Sincerely,

           PATRICK J. DOHERTY
           Attorney at Law

PJD/md

# EXHIBIT B

**Federal Deposit
Insurance Corporation**

## Failed Bank Information for Washington Federal Bank For Savings, Chicago, IL

On Friday, December 15, 2017, Washington Federal Bank For Savings, Chicago, IL was closed by the Office of the Comptroller of the Currency. The FDIC was appointed Receiver. No advance notice is given to the public when a financial institution is closed. All non-brokered insured deposits have been transferred to Royal Savings Bank, Chicago, IL.

**At a Glance**

### FAQs - PDF
Responses to common questions

### Press Release
Official press release

### Balance Sheet
Available at quarter end

### Dividend Information
None paid to date

**If you had a deposit account:**

The total insured balance in your account(s), including checking, savings, money markets, non-brokered Certificates of Deposit, and retirement accounts, has been transferred to Royal Savings Bank.

For accounts exceeding $250,000, you should call 1-877-367-2718 to schedule an appointment with an FDIC Claims Agent.

You may continue to use your checks and ATM/Debit card. Direct deposits like paychecks and social security benefits will continue as usual. Please refer to the Banking Services section below for more details.

Is My Account Fully Insured
Verify insurance status of your accounts (available by December 18, 2017 for 30 days)

EDIE - Electronic Deposit Insurance Estimator
Calculate insurance coverage of deposit accounts

Facts for Depositors
General information explaining the role of FDIC

**If you had a loan:**

You should continue to make payments, including escrow payments, as usual; the terms of your loan will not change.

If you are making escrow payments and receive notification that any portion of your taxes or insurance was not paid, contact your loan officer.

If your loan is currently in process or you had a line of credit, contact your loan officer.

Obtaining a Lien Release
Process on getting a release of lien

Borrower's Guide to an FDIC Insured Bank Failure
Overview of how FDIC processes loans

Facts for Borrowers
General information explaining the role of FDIC

**If you are owed money for a service or product provided:**

You may be eligible to file a claim against Washington Federal Bank For Savings.

If you have not been paid for services rendered prior to December 15, 2017, please refer to the Filing Claims section below.

Facts for Creditors
General information explaining the role of FDIC

 **Beware of scams!**
Please be advised you will not receive any email notification to claim/unlock/suspend your account or to provide any private information. Please be aware of any phishing scams to obtain information from you.

**ACQUIRING INSTITUTION: ROYAL SAVINGS BANK**

## About Royal Savings Bank

The insured balance of all non-brokered deposit accounts have been transferred to Royal Savings Bank, Chicago, IL ("assuming institution") and will be available immediately. The former Washington Federal Bank For Savings locations will reopen as branches of Royal Savings Bank during regular business hours.

Your transferred deposits will be separately insured from any accounts you may already have at Royal Savings Bank for at least six months after the failure of Washington Federal Bank For Savings. Checks that were drawn on Washington Federal Bank For Savings that did not clear before the institution closed will be honored as long as there are sufficient funds in the account.

Principal and interest on insured accounts, through Friday, December 15, 2017, are fully insured by the FDIC, up to the insurance limit of $250,000. Royal Savings Bank will be reviewing rates. You will be notified of any changes. You may withdraw your funds from any transferred account without an early withdrawal penalty until you enter into a new deposit agreement with Royal Savings Bank as long as the deposits are not pledged as collateral for loans. Certain entitlements and different types of accounts can be insured for more than the $250,000 limit. IRA funds are insured separately from other types of accounts, up to a $250,000 limit.

## Contacting Royal Savings Bank

You can contact Royal Savings Bank:

Royal Savings Bank
9226 South Commercial Avenue
Chicago,IL 60617

Royal Savings Bank (https://www.royalbankweb.com)

## Transaction Documentation

Purchase & Assumption Agreement - PDF
Agreement between FDIC and the acquiring institution

Bid Summary
Report on the bids to purchase the failed bank

## Brokered Accounts

As an Insured Deposits transaction, brokered deposits will be held, and the insured funds will be paid directly by the FDIC. Please note: Insured deposits placed via the Internet through a listing service such as QwickRate were passed to Royal Savings Bank.

Deposit Broker's Processing Guide

## BANKING SERVICES

### Automatic Payments/Bill Pay/Online Banking

These services will be available in read-only mode over the weekend and will operate as usual on Monday, December 18, 2017.

### ATM and Debit Cards

Your ATM/Debit card will continue to work as usual.

### Checks

Your checks will be processed as usual. All outstanding checks will be paid against your available insured balance(s). Royal Savings Bank will contact you soon regarding any changes in the terms of your account. If you have a problem with a merchant refusing to accept your check, please contact your branch office.

### Direct Deposit

All direct deposits, for example, social security checks, payroll, veterans' benefits, disability, unemployment or any payment you receive electronically will continue as usual.

### Overdraft Lines of Credit

These lines have been transferred to Royal Savings Bank. Please contact Royal Savings Bank if you have additional questions regarding your accounts.

### Safe Deposit Boxes

You may continue to access your safe deposit box during normal business hours. Any changes will be communicated by Royal Savings Bank.

### Tax Reporting - 1098 and/or 1099

Royal Savings Bank will be responsible for mailing your 1099 tax information. Your 1098 reporting will be done by the FDIC or the servicer of your loan. You will be notified of any changes in ownership or servicing of your loan.

## FILING CLAIMS

**Uninsured Depositors**

Accounts exceeding $250,000 and/or all interest bearing accounts that appear to be related and exceed this limit are reviewed by the FDIC to determine their ownership and insurance coverage. If you think you might have uninsured deposits, you should call the FDIC Call Center to arrange for a telephone interview with a Claims Agent at 1-877-367-2718. The Claims Agent may direct you to download and submit a particular form that will assist in expediting the processing of your claim.

**Creditors**

If you or your company provided a service or product, leased space, furniture, or equipment to Washington Federal Bank For Savings prior to December 15, 2017 and have not been paid, you may have a claim against Washington Federal Bank For Savings.

All creditors having claims against Washington Federal Bank For Savings must submit their claims to the Receiver online or by mail:

Online: FDIC NDCWeb (www5.fdic.gov/NDCWeb)

Email: NonDepClaimsDal@FDIC.gov

Mail: Send completed Proof of Claim Form - PDF to:

FDIC as Receiver for Washington Federal Bank For Savings
Attention: Claims Agent
1601 Bryan Street
Dallas, TX 75201

**Please note: There are time limits for filing a claim. Your claim must be filed on or before 03/21/2018 (the "Claims Bar Date").**

Under federal law, failure to file a claim on or before the Claims Bar Date will result in disallowance of the claim by the Receiver. The disallowance will be final. 12 U.S.C. Section 1821(d)(5)(C).

NOTE TO CLASS CLAIMANTS: By law, the Receiver will not accept a claim filed on behalf of a proposed class of individuals or entities or a class of individuals or entities certified by a court. EACH individual or entity must file a separate claim with the Receiver.

**Priority of Claims**

In accordance with Federal law, allowed claims will be paid, after administrative expenses, in the following order of priority:

1. Depositors
2. General Unsecured Creditors
3. Subordinated Debt
4. Stockholders

**FOR STOCKHOLDERS OF WASHINGTON BANCSHARES, INC.**

**Stockholders**

All shares of Washington Federal Bank For Savings are owned by its holding company, Washington Bancshares, Inc., Chicago, IL. The holding company was not included in the closing of the bank or resulting receivership.

**Contacting the Holding Company**

If you are a stockholder, please do not contact or file a claim with the Receiver. You must contact the holding company directly:

Washington Bancshares, Inc.
2869 S. Archer Avenue
Chicago, IL 60608

**CONTACT INFORMATION**

**Questions About This Closing**

Contact the FDIC Call Center at 1-877-367-2718.

### Hours of Operation - Central Time

| | |
|---|---|
| Friday, December 15, 2017 | 6:00p.m.- 9:00 p.m. |
| Saturday, December 16, 2017 | 8:00 a.m. – 8:00 p.m. |
| Sunday, December 17, 2017 | 8:00 a.m. – 6:00 p.m. |
| Monday, December 18, 2017 | 8:00 a.m. – 8:00 p.m. |
| Thereafter: | 8:00 a.m.- 6:00 p.m. |

**Specific Points of Contact**

Find a point of contact for each of the topics below:

Acquiring Institution(s)

Claims

Loans

Real Estate Owned

Subsidiary

Last Updated 12/20/2017                                                         cservicefdicdal@fdic.gov

Home    Contact Us    Search    Help    SiteMap    Forms    En Español

Website Policies    Privacy Policy    Accessibility Statement    Plain Writing Act of 2010    USA.gov    FDIC Office of Inspector General

Freedom of Information Act (FOIA) Service Center    FDIC Open Government Webpage    No FEAR Act Data