IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Patrick J. Doherty, | ) |
|            Plaintiff, | ) Case No. 18-cv-0703 |
| v. | ) Judge Joan B. Gottschall |
| Federal Deposit Insurance Corporation, as Receiver for Washington Federal Bank for Savings, et al., | ) |
|            Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Federal Deposit Insurance Corporation, as receiver for Washington Federal Bank for Savings ("the FDIC"), moves for summary judgment on plaintiff Patrick J. Doherty's ("Doherty") fraud claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1 *et seq.,* alleged in Counts III and IV of his second amended complaint. The FDIC seeks summary judgment on the damages and proximate causation elements of these claims. Doherty filed a memorandum of law opposing the motion, ECF No. 98, but no response to the FDIC's Local Rule 56.1(a)(3) statement of undisputed material facts. For the reasons that follow, the court grants the motion in part and denies it in part.

### I. Summary Judgment Standard and Evidence

#### A. *Rule 56 Standard*

Doherty recites the Illinois summary judgment standard in his response to the FDIC's motion. ECF No. 98 at 2. "Under the *Erie* doctrine, federal courts in diversity cases (and any other cases in which state law supplies the rule of decision) apply state 'substantive' law but federal 'procedural' law." *Gacek v. Am. Airlines, Inc.*, 614 F.3d 298, 301 (7th Cir. 2010) (citing

*Gasperini v. Center for Humans.*, 518 U.S. 415, 427 (1996)) (other citations omitted). Consistent with the *Erie* doctrine, "Federal courts may grant summary judgment under Rule 56 on concluding that no reasonable jury could return a verdict for the party opposing the motion, even if the state would require the judge to submit an identical case to the jury." *Mayer v. Gary Partners & Co., Ltd.*, 29 F.3d 330, 334 (7th Cir. 1994) (quoting *McEwen v. Delta Air Lines, Inc.*, 919 F.2d 58, 60 (7th Cir. 1990)); *see also Whitlock Corp. v. Deloitte & Touche, L.L.P.*, 233 F.3d 1063, 1065 (7th Cir. 2000); *but see Gacek*, 614 F.3d at 301–03 (holding state summary judgment rule was substantive under *Erie*). As Doherty provides no argument that the state summary judgment cases he cites articulate a substantive rule under *Erie* such that they defeat application of the federal summary judgment standard, *see* Resp. 2, ECF No. 98, this court applies Rule 56.

Rule 56 provides that summary judgment must be entered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In making that determination, a court must view the evidence 'in the light most favorable to the opposing party.' " *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)) (other citation omitted). A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The underlying substantive law governs whether a factual dispute is material: 'irrelevant or unnecessary' factual disputes do not preclude summary judgment." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248). Hence, summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citation omitted).

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See id.* at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor" (citations and quotations omitted)).

### B. The Parties' Local Rule 56.1 Fact Statements and Summary Judgment Evidence

This court's Local Rule (LR) 56.1 specifies the procedure for presenting facts a party contends are undisputed and material. The formal requirements of LR 56.1 aid the just, speedy, and inexpensive resolution of litigation by ensuring that "the facts material to the issues in the case and the evidence supporting such facts are clearly organized and presented for the court's summary judgment determination." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). The Seventh Circuit has therefore "routinely upheld the district court's discretion in requiring parties to comply strictly with local rule requirements." *Id.* (quoting *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009)). The Supreme Court and the Seventh Circuit have "made clear that even *pro se* litigants must follow" the Federal Rules of Civil Procedure and this court's LR 56.1. *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993) (affirming decision to enforce LR 56.1 strictly against a *pro se* plaintiff)); *accord Wilson v. Kautex, Inc.*, 371 F. App'x 663, 664 (7th Cir.

3

2010) ("[S]trictly enforcing Local Rule 56.1 was well within the district court's discretion, even though Wilson is a pro se litigant." (citations omitted)).

Doherty, a licensed attorney, represents himself. *See* Def.'s Statement of Material Facts ("SOF") ¶ 24, ECF No. 93. The FDIC served him with the notice to *pro se* parties regarding summary judgment procedure required by this court's LR 56.2. ECF No. 96. The notice warned Doherty of the consequences of failing to respond to the FDIC's LR 56.1(a)(3) statement of undisputed material facts: "If you do not respond to a fact asserted by the defendant, the judge may decide that you have admitted that the fact is true." ECF No. 96 at 2. Yet Doherty filed no response to the FDIC's LR 56.1(a)(3) fact statement and no statement of additional facts allowed by LR 56.1(b)(3). Consequently, the facts set forth in the FDIC's LR 56.1(a)(3) statement of undisputed material facts are "deemed to be admitted" for summary judgment purposes, though the court continues to view those facts in the light most favorable to Doherty. LR 56.1(b)(3)(C); *see also, e.g.*, *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 411, 414–15 (7th Cir. 2019); *Cracco*, 559 F.3d at 632 (citing *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)).

Doherty attached seven exhibits to his memorandum of law opposing summary judgment. ECF No. 98-1 through 98-7. He cites them directly throughout the memorandum. *See* ECF No. 98. The exhibits consist primarily of loan documents and court filings, plus Doherty's purported affidavit and a handwriting expert's report. *See* ECF Nos. 98-1 thru 98-7.

A "district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements" of undisputed material fact. *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (citations omitted). This court also has discretion to disregard all of Doherty's citations bypassing the LR 56.1 statements and directly citing the summary judgment exhibits. "The rule

4

in this district that summary judgment memoranda must cite the Local Rule 56.1 fact statements is well settled and need not be belabored." *Magee v. McDonald's Corp.*, 2019 WL 10447014, at *4 (N.D. Ill. Mar. 28, 2019) (citing *Mervyn v. Nelson Westerberg, Inc.*, 142 F. Supp. 3d 663, 664–65 (N.D. Ill. 2015), which collects over 20 cases for this proposition).

As a matter of discretion, the court declines to consider exhibits A, B, and G (ECF Nos. 98-1, 98-2, and 98-7) to Doherty's memorandum. Exhibits C and E (ECF Nos. 98-3 and 98-5) will be considered because they duplicate exhibits cited by the FDIC in its LR 56.1(a)(3) statement of undisputed material facts. *See* SOF ¶ 9 (citing ECF No. 36 at 12–19).

Exhibit D is a copy of the third superseding indictment in *United States v. Kowalski, et al.*, No. 19-CR-226 (N.D. Ill. Feb. 25, 2021). ECF No. 98-4. A fourth superseding indictment has since been returned. *Kowalski*, No. 19-CR-226, ECF No. 534 (N.D. Ill. Dec. 7, 2021). The court may take judicial notice of an indictment's accusations. *See, e.g.*, *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012). Although the court takes judicial notice of the fourth superseding indictment, the court does not rely on it as evidence of the facts it alleges or the truth of any of the accusations therein.[1] *See id.* (explaining that it was proper to take judicial notice of an indictment and other documents for "the indisputable facts that those documents exist, they say what they say, and they have had legal consequences. The district court did not rely on the documents as proof of disputed facts in any other sense.").

---

1 The indictment has no effect on the summary judgment analysis, however. Doherty submits it because he believes it shows that the FDIC's position here is inconsistent with the government's accusations in criminal litigation involving fraud allegations against former Washington Federal personnel. *See* Resp. 6, ECF No. 98. There is no inconsistency, however. The FDIC seeks summary judgment here not on a theory that no fraud occurred, but because Doherty cannot prove damages and proximate causation. *See* Mem. Supp. of Mot. Summ. J. 5–10, ECF No. 95.

Doherty's affidavit (Pl.'s Ex. F, ECF No. 98-6) cannot be considered for a more fundamental reason: "an affidavit is admissible in a summary judgment proceeding only if it is sworn to before an officer authorized to administer an oath, such as a notary public." *Trapaga v. Cent. States Joint Bd. Loc. 10*, 2007 WL 1017855, at *2 (N.D. Ill. Mar. 30, 2007) (citing *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985)). Alternatively, an unsworn declaration signed by the declarant may be considered provided that it contains a statement subjecting the declarant to the penalties of perjury substantially in the form provided in 28 U.S.C. § 1746. *See DeBruyne v. Equitable Life Assur. Soc'y*, 920 F.2d 457, 491 (7th Cir. 1990). Doherty's affidavit qualifies neither as an affidavit nor an unsworn declaration because it lacks both a notary's seal and a statement (a.k.a., jurat) subjecting Doherty to the penalties of perjury.[2] *See* ECF No. 98-6 at 1.

## II. Facts at Summary Judgment

The following facts are not in dispute. In 2014, Washington Federal Bank for Savings ("Washington Federal") filed three lawsuits in the Circuit Court of Cook County, Illinois, including claims against Worth Conversion, LLC ("Worth"); John Farano, Jr. ("Farano"); and Doherty for breach of various promissory notes and guaranty agreements in connection with real estate loans issued by Washington Federal. *See* SOF ¶¶ 11–18. Washington Federal named Worth and F&D Services, Inc. ("F&D"), as defendants in all three cases. *See id.* ¶¶ 11–17. Doherty and his business partner, Farano, were named as additional defendants in just one case, Case No. 14 L 2411. *See id.* ¶ 18. The court adopts the parties' practice of referring to this case as the "guaranty action." "Counts I-XXIV in Case No. 14 L 2411 involved loans that F&D Services, Inc. obtained and Doherty and Farano guaranteed. The remaining counts were for

---

2   The FDIC pointed out the problems with Doherty's affidavit in its reply brief, but Doherty has not sought leave to file an amended affidavit. *See* ECF No. 102 at 5.

breach of the Note against Worth Conversion (Count XXV), breach of the guaranty against Farano (Count XXVI), and breach of the guaranty against Doherty (Count XXVII)." SOF ¶ 19 (citation omitted).

While the guaranty action was pending, Doherty obtained a preliminary handwriting expert's report stating that his signature on the 2010 loan extension was forged. ECF No. 98-5 at 2. The state court entered default judgment against Farano approximately two months later (*id.* ¶ 21), and Washington Federal voluntarily dismissed its claims against Doherty and Worth (*id.* ¶ 22).

Doherty then filed this suit in state court against Washington Federal, as well as the attorneys and law firm who represented it, alleging, among others, fraud claims premised on the defendants filing suit against him using the allegedly forged 2010 extension agreement. *See* Second Am. Compl. ("SAC") 3–4, ECF No. 36.

The Office of the Comptroller of the Currency subsequently closed Washington Federal. The Federal Deposit Insurance Corporation stepped into its shoes as receiver and removed this case to federal court. SOF ¶ 26; Notice of Removal, ECF No. 1. This court dismissed Counts I, II, V, and VI of Doherty's second amended complaint for failure to state a claim in 2020, leaving the fraud claims in Counts III and IV pending.[3] 2020 WL 8339216, at *7 (N.D. Ill. May 1, 2020). Those fraud claims are the subject of the FDIC's motion for summary judgment.

---

3   The recitation of the history of this case and prior state court litigation has been abbreviated to the facts most pertinent at summary judgment. Doherty characterizes the full procedural history as "tortured," Resp. 4, and the court has no reason to disagree. For details, *see* 2021 WL 291314, at *1 (N.D. Ill. Jan. 12, 2021); 2020 WL 8339216, at *1–2; *Doherty v. F.D.I.C.*, 932 F.3d 978, 980–82 (7th Cir. 2019).

### III. Analysis

Count IV of Doherty's second amended complaint asserts a fraud claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. § 505/1 *et seq*. The second amended complaint labels Count III as a claim for "excessive fees," SAC 3, ECF No. 36, but at the motion to dismiss stage, Doherty recharacterized Count III as a fraud claim based on the alleged forgery (he did not specify whether he intended a common law or statutory fraud claim). *Doherty*, 2020 WL 8339216, at *5. The court accepted Doherty's recharacterization because the FDIC "could not have truly been surprised by it." *Id*. The court stated that it construed the fraud claim in Count III as "duplicative of the fraud claim alleged in Count IV, with the exception that Count III specifically pleads a specific category of damages (excessive fees)." *Id.* Thus, Counts III and IV allege different categories of damages, but they "rise and fall together to the extent they rely on overlapping facts and legal theories." *Id.* The FDIC analyzes Counts III and IV as ICFA, rather than common law, fraud claims at summary judgment. *See* ECF No. 95 at 8–10. Doherty does not contest this analysis or argue that he is bringing a common law fraud claim in response. *See* ECF No. 98. The court therefore analyzes Counts III and IV together under the ICFA.

An ICFA claim brought by a private party has five elements: "(1) a deceptive [or unfair] act or practice by the defendant; (2) the defendant intended that the plaintiff rely on the [deceptive or unfair practice]; (3) the deceptive [or unfair] act[s] occurred during a course of conduct involving trade or commerce; and (4) actual damage to the plaintiff; (5) proximately caused by the deceptive [or unfair] act[s]." *Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (citing *De Bouse v. Bayer AG*, 922 N.E.2d 309, 313 (Ill. 2009)). The FDIC moves for summary judgment on the actual damages and proximate causation elements of Doherty's claims. ECF No. 95 at 5–10.

8

### A. *Actual damages*

Proving actual damages under the ICFA requires evidence that the plaintiff suffered a "pecuniary loss." *Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (citing *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010)). Doherty pleaded in his second amended complaint that he incurred over $30,000 in costs and fees. *See* SAC ¶ 13. Exhibit C to the second amended complaint summarized Doherty's alleged costs and fees, but it did not make clear whether Doherty, Worth, or both incurred those costs and fees. *See* ECF No. 36 PageID Nos. 776–78. In his summary judgment response brief, Doherty sets out a chart of costs and fees he claims as damages, citing his affidavit. *See* ECF No. 98 at 5. The chart consists of a three-column list of dates, addresses of properties in the Chicago area, and dollar amounts, but Doherty has not explained the significance of the addresses, dates, and dollar figures beyond claiming them as damages. *See id.* at 5–6.

Neither the affidavit nor the chart in Doherty's response brief is proper summary judgment evidence. As explained above, Doherty's affidavit is not admissible as summary judgment evidence because it lacks a notary's seal and does not qualify as an unsworn declaration under 28 U.S.C. § 1746. *See* ECF No. 98-6 at 1. Nor does the affidavit include the chart of costs or set out any specific costs incurred.[4] *See id.* Without his affidavit, Doherty rests,

---

4  Doherty's unsworn affidavit reads in its entirety:

> I, PATRICK DOHERTY, state as follows:
>
> 1. I am the plaintiff in the above captioned case.
>
> 2. I suffered direct damages regarding the above captioned case. I was forced to pay court costs, travel costs, my time and effort and overcharge fees. The banks [sic] actions caused me to incur excessive fees and a plummeting credit score with potential jeopardy to my law license's good standing. In addition to incurring Appellate Court filing fees in both the State and Federal Court and coping [sic] costs. WFBS filed deceptive pleading in the Circuit Court of Cook County that caused me direct damages in over payment of loans.

(continued on next page)

9

through the unsworn chart in his response brief, on a subset of the damages alleged in exhibit C to the second amended complaint.[5] The court considered exhibit C when assessing the sufficiency of the second amended complaint because it was attached as an exhibit and therefore part of the SAC itself "for all purposes." Fed. R. Civ. P. 10(c); *see also Doherty*, 2020 WL 8339216, at *6. The chart in Doherty's brief and exhibit C cannot be considered at summary judgment, however, because Doherty may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."[6] *Anderson*, 477 U.S. at 248 (alteration in original) (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288 (1968)). Neither the chart in Doherty's response nor his purported affidavit creates a fact issue on damages for excessive fees as alleged in Count III of the SAC.

---

> The Bank's forgery and fraud caused the Plaintiff to suffer emotional and professional consternation and consumed precious time from his regular practice of law that was financial [sic] damaging and clearly unnecessary. Punitive Damages are appropriate.

ECF No. 98-6 at 1.

5  Doherty claimed approximately $30,000 in damages in his second amended complaint. SAC ¶ 13; ECF No. 36 PageID Nos. 776–78 (Ex. C to SAC). The list of costs in Doherty's response brief comes to approximately $13,000. *See* ECF No. 98 at 5. The discrepancy has not been explained. *See id.* at 5–6.

6  "In order to assert an affirmative claim against a lender, a guarantor must establish that he suffered a direct injury as a result of the lender's alleged breach against the principal, which is independent from and not merely derivative of the resulting injury suffered by the principal." *Performance Elec., Inc. v. CIB Bank*, 864 N.E.2d 779, 782 (Ill. App. Ct. 1st Dist. 2007) (quoting *N. Trust Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1101 (Ill. App. Ct. 1st Dist. 1995)). The FDIC has submitted unrebutted summary judgment evidence it contends shows that most of the costs listed in Doherty's charts were incurred in connection with other lawsuits against Worth to which Doherty was not a party. *See* SOF ¶¶ 11–16, 30–42. The FDIC argues that Doherty lacks standing as a guarantor under Illinois law to recover these costs. The court does not rule on standing because it has no proper summary judgment evidence before it concerning these alleged damages and because the court cannot tell from either the list of dates, property addresses, and dollar amounts in Doherty's response brief or in exhibit C to the complaint how, if at all, any of the costs and fees listed relate to Washington Federal's alleged deceptive acts. *See* ECF No. 98 at 5; ECF No. 36 PageID Nos. 776–78 (Ex. C to SAC).

*See Fillmore v. Markham Motors Outlet*, 1996 WL 238733, at *3 (N.D. Ill. May 3, 1996). Count III must therefore be dismissed.

Nevertheless, the handwriting expert's report attached as exhibit E to Doherty's response memorandum permits the reasonable inference that Doherty expended funds to obtain it. *See* ECF No. 98-5. Handwriting experts do not ordinarily work for free. As the FDIC argues in reply, Doherty has produced no receipts or evidence indicating whether he or Worth paid for the report. *See* Reply 7, ECF No. 102. However, the FDIC cites no case requiring a plaintiff to produce receipts at summary judgment. *See id.* At summary judgment, "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255 (citing *Adickes, supra*, 398 U.S. at 158–59). An ICFA "plaintiff need not prove the amount of damages to an absolute certainty; however, . . . evidence must include a basis for computing damages with a fair degree of probability." *Spiegel v. EngageTel Inc.*, 372 F. Supp. 3d 672, 689 (N.D. Ill. 2019) (alteration in original) (quoting *Petty v. Chrysler Corp.*, 799 N.E.2d 432, 439 (Ill. App. Ct. 1st Dist. 2003)). Since a reasonable jury could infer that Doherty personally expended funds to obtain the expert report stating that his signature was forged on the 2010 loan extension, he has produced enough evidence of a pecuniary loss to survive summary judgment.[7] His damages are limited, however, to the costs he personally incurred to obtain the report.

---

7   The cost of the handwriting expert's report arguably qualifies as a cost associated with litigating the guaranty action. The Illinois appellate court held in *Tolve v. Ogden Chrysler Plymouth, Inc.*, 755 N.E.2d 536, 541 (Ill. App. Ct. 2d Dist. 2001), that the plaintiff could not recover as ICFA damages $400 in attorneys' fees she spent defending a small claims suit brought against her by the defendant. The following rule governed the issue: "While it is recognized that where the natural and proximate consequences of a wrongful act have been to involve the plaintiff in litigation with others, there may be recovery in damages against the author of such act, measured by the reasonable expenses incurred in such litigation, yet the rule is equally well established that where an action based on *the same wrongful act* has been prosecuted by the plaintiff against the defendant to a successful (continued on next page)

### B. Proximate Causation/Reliance

Unlike a common law fraud claim, "the ICFA does not require a plaintiff to 'show actual reliance or diligence in ascertaining the accuracy of misstatements.'" *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 883 (7th Cir. 2005) (quoting *Zimmerman v. Northfield Real Est., Inc.*, 510 N.E.2d 409, 417–18 (1986)); *see also id.* at 881–82 (elements of common law fraud). A private ICFA plaintiff must establish proximate causation, meaning that "proof of 'actual damage' and proof that the damage occurred 'as a result of' the [defendant's] deceptive act or practice." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514–15 (7th Cir. 2006) (alterations omitted) (quoting 815 Ill. Comp. Stat.§ 505/10a).

The FDIC cites cases holding that, to show proximate cause, the "plaintiff must actually be deceived by a statement or omission that is made by the defendant." *Cmty. Bank of Trenton v. Schnuck Markets, Inc.*, 887 F.3d 803, 822 (7th Cir. 2018) (quoting *De Bouse, supra*, 922 N.E.2d at 316); *accord Oshana*, 472 F.3d at 513–14 (citing *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 164 (Ill. 2002)); *see also Avery v. State Farm Mut. Inc. Co.*, 835 N.E.2d 801, 863 (Ill. 2005) ("[I]t is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation." (citation omitted)). Doherty points to no summary judgment evidence tending to show that he was actually deceived by a statement made by Washington Federal. His entire argument on this subject reads, "Clearly the fraud [Washington Federal] perpetuated was the proximate cause of the injuries." Resp. 6, ECF No. 98 (no citation). Furthermore, the limited evidence in this record and Doherty's pleadings establish that Doherty stated to opposing counsel in the guaranty action and the other

---

issue, he can not in a subsequent action recover, as damages, his costs and expenses in the former action." *Id.* (emphasis in original) (quoting *Ritter v. Ritter*, 46 N.E.2d 41, 44 (Ill. 1943)). The parties have not briefed the availability of litigation costs and attorneys' fees as damages, including the question of whether the same alleged wrongful acts were litigated successfully in the guaranty action.

12

suits filed against Worth that the 2010 loan extension contained a forged signature.[8] *See, e.g.*, SAC ¶ 26; Pl.'s Ex. E (handwriting expert's report).

Doherty's failure to cite admissible evidence or develop a legal argument on proximate causation is a sufficient justification for entering summary judgment. *See, e.g.*, *Scheidler v. Indiana*, 914 F.3d 535, 544 (7th Cir. 2019); *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018) (entry of summary judgment "on the ground that [the plaintiff] failed to develop coherent arguments" because "a party opposing a summary judgment motion must inform the district court of the reasons why summary judgment should not be entered." (citing *Domka v. Portage Cnty.*, 523 F.3d 776, 783 (7th Cir. 2008))). But "even where many or all of the material facts are undisputed, the court still must ascertain that judgment is proper 'as a matter of governing law.'" *Johnson v. Gudmundsson*, 35 F.3d 1104, 1112 (7th Cir. 1994) (quoting *Glass v. Dachel*, 2 F.3d 733, 739 (7th Cir. 1993)) (other citations omitted).

The cases the FDIC cites requiring actual deceit are distinguishable. They reject a "generalized market theory of causation, claiming that the defendant 'inflate[d] the cost of its product far above what it could have charged had the' defendant not 'misled consumers.'" *Cmty. Bank of Trenton*, 887 F.3d at 822 (alteration in original) (quoting *De Bouse*, 922 N.E.2d at 314–15). Doherty alleges no such theory here. Courts applying Illinois law have distinguished the cases the FDIC cites because they involved plaintiffs who alleged that others in

---

8    The FDIC's argument that Doherty did not know about the alleged forgery when the handwriting expert's report was created on April 27, 2015, defies logic. ECF No. 98-5 at 1; *see also* Mem. Supp. of Mot. Summ. J. 10. Granted, Doherty has failed properly to contest the fact that he did not learn of the forgery until the guaranty action was dismissed in June 2015. SOF ¶ 23. In support, defendant relies on one statement by Doherty in his second amended complaint, *see id.* (citing SAC ¶ 5). But the SAC is not proper summary judgment evidence, and the statement the FDIC cites is contradicted by other allegations in the SAC, *e.g.*, ¶ 26. The date of the handwriting expert's report is strong evidence that Doherty suspected fraud well before the dismissal of the guaranty action two months later.

the market were deceived by the defendant's advertising, even though they (the plaintiffs) were not. *See Pappas v. Pella Corp.*, 844 N.E.2d 995, 1004 (Ill. App. Ct. 1st Dist. 2006); *Breeze v. Bayco Prods. Inc.*, 475 F. Supp. 3d 899, 907–08 (S.D. Ill. 2020); *IWOI, LLC v. Monaco Coach Corp.*, 581 F. Supp. 2d 994, 1004 (N.D. Ill. 2008). In *Pappas*, by contrast, the plaintiffs bought windows and later sued the manufacturer, alleging that it knew about defects in the products plaintiffs purchased but did not tell buyers. *See* 844 N.E.2d at 997. Distinguishing cases requiring actual deceit of the plaintiff, the court reasoned, "In effect, plaintiffs allege they relied on [the manufacturer]'s concealment by silence. Requiring anything more would eviscerate the spirit and purpose of the Consumer Fraud Act." *Id.* at 1004; *see also Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 594–95 (Ill. 1996). *Pappas*'s reasoning, which is consistent with *Connick*, has been followed in cases analyzing proximate causation based on defendants' knowing concealment of facts from buyers. *See Breeze*, 475 F. Supp. 3d at 907–08; *Muir v. Nature's Bounty, Inc.*, 2017 WL 4310650, at *5 (N.D. Ill. Sept. 28, 2017); *IWOI*, 581 F. Supp. 2d at 1004.

      This case involves alleged concealment of a forgery rather than a product defect, but the reasoning of *Pappas* and similar cases applies here. The Illinois appellate court has held that a person whose signature was allegedly forged as a guarantor of a loan agreement has statutory standing to bring an ICFA fraud claim. *Bank One Milwaukee v. Sanchez*, 783 N.E.2d 217, 220–22 (Ill. App. Ct. 2d Dist. 2003). As in *Pappas*, that holding rested in no small part on the "remedial" nature of the ICFA. *See id.* at 220 ("There is a clear mandate from the Illinois legislature that the courts of this State utilize the Act to the utmost degree in eradicating all forms of deceptive and unfair business practices and grant appropriate remedies to injured parties." (alteration omitted) (quoting *Duhl v. Nash Realty Inc.*, 429 N.E.2d 1267, 1277 (Ill. App. Ct.

1st Dist. 1981) (other citations omitted))). Requiring Doherty to show that he was deceived would deny him a remedy and would deny an ICFA remedy to nearly all forgery victims. Like the plaintiff who discovers a product defect, it is difficult to imagine how, except perhaps due to a lapse of memory about signing a document, any plaintiff would be actually deceived by a forgery of the plaintiff's own signature. Accordingly, Doherty need not prove he was actually deceived by Washington Federal's deceptive acts. Rather, he must show that he effectively relied on Washington Federal's "concealment by silence" to satisfy proximate causation. *Pappas*, 844 N.E.2d at 1004; *see also Muir*, 2017 WL 4310650, at *5.

A reasonable fact finder could conclude from the undisputed evidence that Doherty was unaware of the forgery for four years until the filing of the guaranty action prompted him to obtain the handwriting expert's report. *See* SOF ¶¶ 18–20, 22–30. From this evidence, it would be reasonable to conclude that Doherty effectively relied on Washington Federal's concealment by silence of the forgery.

## IV. Conclusion

For the reasons stated, the FDIC's motion for summary judgment is granted in part and denied in part. Count III of the second amended complaint is dismissed, and Doherty's damages on Count IV are limited to the costs he personally incurred to obtain the handwriting expert's report dated April 27, 2015, ECF No. 98-5.

Dated: March 25, 2022             /s/  
                                                                         Joan B. Gottschall  
                                                                         United States District Judge